No. 85,709

STATE OF KANSAS, *Appellee*, v. THOMAS FINLEY, *Appellant*.

(42 P.3d 723)

238

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was on the brief for appellant.

*Sheryl L. Lidtke*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Thomas Finley appeals for the second time from his jury convictions of first-degree felony murder and the manufacture of methamphetamine. This court reversed his first convictions for the same offenses in *State v. Finley*, 268 Kan. 557, 998 P.2d 95 (2000). The defendant argues in this appeal that he was deprived of his due process rights under the Kansas and United States Constitutions when the State destroyed certain crime scene evidence and that comments of the prosecutor during closing argument amounted to prosecutorial misconduct requiring reversal of his convictions. Finding no reversible error, we affirm the defendant's convictions.

This case involves a methamphetamine lab fire resulting in the death of LaDonna Jones. The State's theory at trial was that the defendant, codefendant George LaMae, the defendant's girlfriend Denise Sklar, and the victim were on the second floor of the defendant's house cooking methamphetamine when the fire started. Everyone but Jones escaped the fire. LaMae was charged and convicted of first-degree felony murder and manufacturing methamphetamine. His case was affirmed by this court in *State v. LaMae*, 268 Kan. 544, 998 P.2d 106 (2000).

Other witnesses at the defendant's second trial include the defendant's neighbors Renee Crabtree, Darrell Vaughan, and Amy Baird, and the mother of the defendant, Carolyn Finley. Shawn Rader, Lonnie Joe Pugh, and Elizabeth Scarlett were all present at the time of the fire and testified at trial.

The primary factual question before the jury was whether the defendant participated in manufacturing the methamphetamine. In addition to his own testimony, the defendant called his girlfriend Sklar and Walter Parrish to verify the defendant's claim that he arrived at his house minutes after the fire started. He then attempted to save the individuals in his house as the fire burned, causing severe burns on his legs.

Prior to trial, the defendant moved to suppress evidence seized from his home based upon the destruction of some of the evidence by the State. During the hearing on the defendant's motion, the State called L.D. Mathews, a Drug Enforcement Agent (DEA) in charge of working clandestine labs. Agent Mathews testified that he photographed and videotaped all crime scene evidence before removing it from the defendant's house. Agent Mathews documented objects in the lab and then, according to standard operating procedures, contracted with a hazardous waste company to clean up the premises. Agent Mathews assured the court it was DEA policy to destroy materials contained in methamphetamine labs.

Agent Mathews testified that the DEA has no facility to store material seized from methamphetamine labs. Of the 19 bottles of pseudoephedrine found at the scene, Agent Mathews saved only one, believing the bottles to be "dirty" by reason of their contact with dangerous chemicals. Agent Mathews cleaned the sample bottle and put it in a plastic bag. He testified he did not see anything that might exonerate the defendant, although he admitted on cross-examination he did not yet know who the suspects were.

Agent Mathews admitted on cross-examination that DEA guidelines require the safety officer, together with a DEA chemist and a disposal service, to determine which items are hazardous. Agent Mathews was designated the site safety officer and admitted there was no DEA chemist on the scene. Further, Agent Mathews did not confer with the disposal service in determining which items should be destroyed. Finally, Agent Mathews admitted he did not obtain a court order to destroy any material seized at the home of the defendant.

The court had denied a similar motion filed by the defendant in his first trial. Upon conclusion of the hearing in this case, the court announced its decision in the first trial would apply to the defendant's motion in this case. The trial court concluded in part: "And so the court does not find that those items were destroyed in bad faith. There was nothing there that was of an apparent exculpatory nature and so that's the reason for the Court's ruling regarding the destruction of the evidence."

Additional facts regarding the defendant's claim of prosecutorial misconduct during closing argument will be discussed when addressing the defendant's claims. We note the defendant has not questioned the sufficiency of evidence to establish his convictions. We do not set forth the facts of this case in detail but refer the reader interested in these facts to Finley's first reported case in *Finley*, 268 Kan. 557, and to the case of the codefendant in *LaMae*, 268 Kan 544.

Destruction of Crime Scene Evidence.

The defendant argues that his due process rights were violated when the DEA destroyed the objects associated with the methamphetamine lab. He makes two separate but related arguments. First, he argues the destruction of the crime scene hazardous materials violated his due process rights under the Fourteenth Amendment to the United States Constitution. Second, he cites cases from a number of other states purporting to grant greater protection in their state constitutions than granted under the Fourteenth Amendment to the United States Constitution. The defendant urges us to follow this authority.

The State does not address the defendant's greater protection argument but rests its response on the defendant's failure to establish bad faith of the State in the destruction of the evidence. The State argues that the defendant's failure to demonstrate bad faith is fatal to his constitutional argument. We agree.

This court in *LaMae* analyzed the identical issue based on the same facts existing in the case we now consider. This court relied on the analysis in *Arizona v. Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, (1998), in concluding that the first require-

ment for a due process challenge following the destruction of potentially useful evidence was establishing bad faith on the part of the State. 268 Kan. at 550.

In *Arizona v. Youngblood*, 488 U.S. at 57, the United States Supreme Court stated that while good or bad faith of the State is irrelevant when the State fails to disclose material exculpatory evidence, the Due Process Clause requires a difference result when the State fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The Court stated that it was not willing to read the Due Process Clause as imposing on the police an absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance, and "requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." 488 U.S. at 58.

The determination of the question of bad faith turns on the "officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed," and the question of bad faith is a question of fact. 268 Kan. at 551. The question we are presented with in this appeal is whether the district court's findings of fact concerning the issue of bad faith is supported by substantial competent evidence and whether the findings of the district court are sufficient to support its conclusions of law. See *State v. Ratley*, 253 Kan. 394, 398, 855 P.2d 943 (1993).

Agent Mathews did not believe any of the destroyed evidence had an exculpatory value for any potential suspects. Substantial competent evidence supports this conclusion. The objects found at the scene were photographed and videotaped before being handled by Agent Mathews. One of the empty pseudoephedrine bottles was preserved for evidence. These items were at the defendant's disposal to use in his defense, just as the State could use them to bolster its case. There is nothing in the record to suggest the

agents working the scene should have been aware of any exculpatory value to the evidence destroyed. The evidence of record failed to establish bad faith on the part of the State, and the district court did not err in its ruling.

Finally, we pause briefly to respond to the defendant's argument that we should give more protection under our state constitution than is afforded an accused under the Fourteenth Amendment to the United States Constitution. This position has been advanced but consistently rejected by this court. The constitutional rights granted an accused under our state constitution are coextensive with those rights granted an accused under the United States Constitution. *State v. Spain*, 269 Kan. 54, 59, 4 P.3d 621 (2000).

## Prosecutorial Misconduct

The defendant argues that the prosecutor engaged in sufficiently egregious misconduct during closing argument to require reversal of his convictions. Specifically, he argues (1) the prosecutor appealed to community interest, (2) the prosecutor expressed her personal opinion regarding the defendant's credibility, (3) the prosecutor expressed her personal opinion regarding one of the State's witnesses, (4) the prosecutor improperly defined reasonable doubt for the jury, and (5) the cumulative effect of the misconduct requires reversal. We examine his contentions below and conclude that the errors occurring did not deprive the defendant of a fair trial.

## Scope of Review

The analytical framework for resolving questions of prosecutorial misconduct on the appellate level is well settled in Kansas:

"Kansas does not ordinarily apply the plain error rule and reversible error normally cannot be predicated upon a complaint of misconduct by the prosecutor during closing argument where no contemporaneous objection is lodged. However, if the prosecutor's statements rise to the level of violating a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process, reversible error occurs despite the lack of a contemporaneous objection. [Citation omitted.]

"An appellate court's analysis of the effect of a prosecutor's allegedly improper remarks in closing argument is a two-step process: First, the appellate court must determine whether the remarks were outside the considerable latitude the pros-

ecutor is allowed in discussing the evidence. Second, the appellate court must determine whether the remarks constituted plain error. [Citation omitted.]" *Finley*, 268 Kan. at 571-72.

The inquiry of whether the remarks constitute plain error requires an analysis of whether the errors were so gross and flagrant as to prejudice the jury against the accused, thereby denying the accused a fair trial. 268 Kan. at 572. The accused is denied a fair trial if the reviewing court is unable to determine from reviewing the record as a whole that the error had little, if any, likelihood of changing the result of the trial. 268 Kan. at 572.

Before addressing the defendant's specific complaints, we note that the evidence in this second trial relating to the defendant's guilt was overwhelming compared to the weaker evidence presented during the defendant's first trial. The analysis finding reversible error in the first case relied in part on the fact that "evidence of the defendant's presence was not overwhelming." 268 Kan. at 572. However, the conviction in this case contained not only all the evidence in the first trial, but also reflected the testimony of the codefendant, George LaMae. After defendant's first trial, LaMae was convicted and the court determined in this case that LaMae had no Fifth Amendment right to silence. LaMae's testimony directly implicated the defendant's involvement in the methamphetamine cooking process which caused the fire resulting in the death of Jones. Moreover, the State's other witnesses, including Rader, Pugh, and Scarlett, contradicted the defendant's story by placing him at the house when he claimed to be at another place.

## (1) Improper Appeal to Community Interests

The defendant complains the prosecutor improperly appealed to community interests with the following comments:

"There are certain types of felonies that are so dangerous that our legislature has decided that if people are going to commit those kind of felonies, then they're going to be held responsible for the deaths or the injuries or the consequences that occur during the commission of those felonies.

"The purpose of the law is to hold those people accountable even for reckless acts. The State is not claiming that Mr. Finley intended to kill LaDonna Jones that morning. Even if it was a reckless act though, an unintended killing, it was

still a killing during the commission of an inherently dangerous felony and our law says that he is to be held responsible for that killing. That's what felony murder is.

"We don't want people making meth in our communities."

The defendant objected and the court sustained the objection. Then, the prosecutor continued with the following: "The rationale behind the felony murder rule is to prevent people from making meth in our community." This time, the defendant's objection was overruled.

Later, the prosecutor closed her arguments with the following:

"He's not accepting responsibility for what he did. And his behaviors are exactly why we have this felony murder rule. He cannot expect to get away with this killing. He was involved in the commission of a very, very dangerous felony, one that our law says is an inherently dangerous one. And as a result, a fire broke out and killed LaDonna Jones. And if you follow the judge's instructions on that law, then you must find him guilty of not only intentionally manufacturing or making methamphetamine, but also hold him responsible for LaDonna's death because of that. Thank you."

The defendant did not object to this argument.

"In summing up a case before a jury, the prosecutor may not introduce or comment on the facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in discussing it." *State v. Duke,* 256 Kan. 703, 720, 887 P.2d 110 (1994). The comment that the defendant was not accepting responsibility for his actions is a comment based on a fair inference drawn from the evidence. The inference is that the defendant was not telling the truth with his story that he was elsewhere when the fire broke out. Such an inference is permissible based on testimony presented by the State's witnesses who were in and about the house prior to the fire, including Pugh, LaMae, Rader, and Scarlett. Moreover, when the prosecutor was discussing how manufacturing methamphetamine is an inherently dangerous felony, she was commenting upon the trial court's instructions.

The prosecutor's comments asking the jury not to let the defendant get away with the crime is in most instances permissible comment. In *State v. Cravatt,* 267 Kan. 314, 332, 979 P.2d 679

(1999), we considered closing arguments wherein the prosecutor said: "Don't let a murderer go free because of these half-baked theories the defense has presented to you." The court characterized the statement as follows: "Rather than promise dire consequences if the defendant was set free, the remarks asked the jury not to let a person who had, from the evidence, committed murder go free simply because of the defendant's highly implausible statements." 267 Kan. at 333. Similarly, the prosecutor's comment in this case was not an appeal to community interests in the sense that a not guilty verdict would have some sort of negative impact on the community. Rather, the prosecutor was arguing the defendant should not escape responsibility for this crime based on his highly implausible story that he just happened to show up very early in the morning just seconds after the fire had started, having no knowledge of the methamphetamine lab in his house.

The prosecutor's comment "[w]e don't want people making meth in our communities" and the comment regarding the prevention of "people from making meth in our community" were improper in that such comments inferentially ask the jury to render a verdict to protect the community. However, when these comments are considered in the context of the entire argument, they do not amount to reversible error. These comments relate to the dangerousness of the act of manufacturing methamphetamine, an act mentioned in the trial court's instructions and thereafter fair comment by a prosecutor. Here, the comments go too far, but in light of the record as a whole and the overwhelming evidence of guilt, we conclude beyond a reasonable doubt that the comments had little if any likelihood of changing the result of the trial. See *State v. McCorkendale*, 267 Kan. 263, 278-79, 979 P.2d 1239 (1999).

(2) Prosecutor's Opinion on Finley's Credibility

The defendant argues the prosecutor improperly expressed her opinion regarding the veracity of the defendant and his witnesses. The defendant complains of the following:

"Tom and Denise Sklar both testified pretty consistently with each other, but their stories are incredible and they're virtually impossible to believe. What are

the odds that they would pull up to the house at exactly the same time that the fire is breaking out, at exactly the same time that George LaMae was running down the stairs and coming out of the house? What are the odds of that? Isn't that just coincidental? That's a pretty big coincidence if it is.

. . . .

"And don't forget all the inconsistencies that I pointed out in Tom's prior sworn testimony. He's said various things at various times, and the reason why people do that is because they can't keep all the lies straight."

Again, there was no objection lodged by the defendant to any of the above comments.

This court in *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000), noted the following with respect to comments on witness credibility:

"Pabst's credibility was crucial to the case. The prosecutor placed before the jury unsworn testimony which it should not have considered: his personal opinion on Pabst's credibility and the credibility of the State's evidence. Stating facts not in evidence is clearly improper. [Citation omitted.] Accusing Pabst of lying goes far beyond the traditional wide latitude afforded to prosecutors in closing argument. [Citation omitted.] Inherent in this wide latitude is the freedom to craft an argument that includes reasonable inferences based on the evidence. When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury."

The *Pabst* court reversed the conviction based on the prosecutor's having injected his personal opinion about the credibility of the defendant. 268 Kan. at 510-12.

The prosecutor's argument in the present case was not improper. The prosecutor based her argument on an inference drawn from the nature of the defendant's conflicting stories, not on the prosecutor's knowledge of the defendant's veracity. Furthermore, the phrase "they can't keep all the lies straight" does not come close to the egregious manner in which the prosecutor in *Pabst* called the defendant a liar. See 268 Kan. at 505-06. As the comment purported to be based on evidence, not on the prosecutor's personal knowledge of the defendant's veracity, it cannot be said the prosecutor's comment denied the defendant a fair trial.

The defendant further argues that the following comment by the prosecutor was improper:

"And Tom and Denise are the only ones that really have a motive to fabricate any lies in this case. He's not going to—he might admit to you that he uses drugs, that he used them, that he hangs out with people, but he's not going to admit that he made meth on this day because that would be admitting to felony murder. And Tom and Denise had plenty of time to get their stories straight, to conjure up what they were going to tell you all."

The above comments constitute fair comment on the evidence concerning the defendant's motives. While *Pabst* informs us the use of the word "lie" or its derivative should be avoided by prosecutors, the above argument concerning motive is a fair comment based on reasonable inferences from the evidence. Furthermore, the fact that the defendant and Sklar had time to coordinate their stories is a fair observation. The defendant and Sklar first went to the defendant's mother's house after the fire, and then went to a hotel. During this time, they certainly had time to agree on their version of the morning's events.

Last, the defendant complains of the following:

"And I'm sorry, but I just can't buy this story that Tom and Denise come up with that Tom was somewhat of a hero risking his life to go in and save these people in the house. It seems to me there was no remorse for LaDonna's injuries or her death. Only emotion that we saw from him or Denise came when they were testifying about his own injuries. Doesn't seem like a martyr to me."

The defendant did not object to the above comment. While the prosecutor's comments are based on her belief that the defendant's story is incredible, to the extent she expresses her belief as to credibility she commits error. It is for the jury to resolve questions of credibility and it is improper for a prosecutor to express his or her personal belief about the credibility of witnesses testifying at trial. 268 Kan. at 507, 510. A prosecutor may, however, discuss the credibility of witnesses as revealed in the evidence presented at trial.

Given our standard of review and the overwhelming evidence of guilt, we conclude that the above error had little likelihood of changing the result of the trial. We are able to conclude that the error was harmless beyond a reasonable doubt.

(3) Prosecutor's Opinion on Truthfulness of State's Witnesses

The defendant also argues the prosecutor improperly commented on the truthfulness of the State's witnesses. In closing arguments, the prosecutor argued:

"Why wouldn't he just say somebody else did it? Why wouldn't he blame Shawn? Why wouldn't he blame Lonnie Pugh? Why wouldn't he say Mike Quinn and him were doing it? Why would he point to Tom? There's no ax for him to grind against Tom Finley. He says it was Tom because it's true. He and Tom were up there making the meth. And all the physical evidence and the testimony of the witnesses corroborates George LaMae's story, his version of it, not Tom Finley's."

The above comments discuss the testimony of a critical witness for the State, the co-defendant George LaMae and his apparent lack of motive to lie compared with the defendant's motive to lie. The comments do not constitute error but are fair comment based upon the trial evidence.

The prosecutor did commit error when she argued before the jury that "every time that the defendant objected to the admission of their evidence, you noticed that it was overruled because there's no basis in law for that objection. They didn't do anything wrong." The defendant's objection was overruled. It is a well established law in this state that rulings of the trial court on objections to evidence are not a proper subject for a prosecutor's closing argument. Why any prosecutor would conclude otherwise and mention such rulings in closing argument to bolster its case before the jury is beyond any good answer. When the law is so clear we cannot understand why such errors occur. However, we conclude that the error had little likelihood of changing the result of the defendant's trial. Given the overwhelming evidence of guilt in this case, and the brief nature of the prosecutor's comment, we conclude that the error committed was harmless beyond a reasonable doubt.

## (4) Improper Definition of Burden of Proof

The defendant also argues the prosecutor improperly defined the State's burden of proof with the following:

"I would submit to you that a reasonable doubt is really nothing more than a fair doubt that's based on reason and common sense and arises from the status of the evidence. It's impossible for me to prove everything to you by an absolute certainty. At the same time, a defendant should not be convicted just on speculation and conjecture, but you have much more than that in this case. You don't just have speculation or conjecture that Tom Finley is guilty. All the evidence, all the inferences to be drawn from that evidence point to only one verdict in this case, and that is that Tom Finley is guilty. Thank you."

The defendant failed to object to the prosecutor's argument regarding the burden of proof.

The defendant argues this court's decision in *State v. Mitchell*, 269 Kan. 349, 7 P.3d 1135 (2000), requires a finding that the above is improper comment on the reasonable doubt standard. *Mitchell* is not helpful because it involves the prosecutor's attempt to equate "reasonable doubt" with "common sense." 269 Kan. at 358. The defendant also cites *State v. Banks*, 260 Kan. 918, 927 P.2d 456 (1996). The *Banks* court held the following definition of reasonable doubt to be improper: "Reasonable doubt means if you are going to say these men are not guilty of something, you have to give a reason for it." 260 Kan. at 926. It should be noted that the *Banks* court, in an analysis of the lower court's refusal to grant a mistrial based on the faulty definition, ultimately affirmed the trial court. 260 Kan. at 927-28.

The Tenth Circuit in *U.S. v. Miller*, 84 F.3d 1244, 1251-52 (10th Cir. 1996), *rev'd in part on other grounds U.S. v. Holland*, 116 F.3d 1353 (10th Cir. 1997), approved the following instruction used by a trial court:

"A reasonable doubt is a fair doubt based on reason and common sense and arising from the state of the evidence. It is rarely possible to prove anything to an absolute certainty, but at the same time, a defendant is not to be convicted on mere suspicion or conjecture. You are instructed that a reasonable doubt is a doubt that would make a reasonable person hesitate to act in the graver and more important transactions of life."

The problem with the prosecutor's argument in this case is that she stopped after the "suspicion or conjecture" language. Thus, the risk is that the definition gave the jury the impression something more than suspicion or conjecture is sufficient to reach reasonable doubt; however, this ignores the first part of the prosecutor's argument, which defined reasonable doubt in the language sanctioned by the *Miller* court. It cannot be said the prosecutor's argument regarding the burden of proof denied Finley a fair trial.

Cumulative Prosecutorial Misconduct

Last, the defendant argues the cumulative nature of the prosecutor's comments should result in a reversal. This argument fails

as well. Many of the prosecutor's allegedly improper comments are proper. Keeping in mind the testimony of LaMae, Scarlett, Pugh, and Rader, which contradicted the defendant's story, it cannot be said any error had the effect of changing the outcome of this trial.

Affirmed.