NOT DESIGNATED FOR PUBLICATION

No. 113,187

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN L. MARSHALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed April 8, 2016. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Shawn M. Boyd*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam*:  Sean L. Marshall appeals his conviction of one count of attempted aggravated robbery. Finding no error in the district court's admission of evidence, its ruling on Marshall's motion for new trial, or in its appointment of new counsel, we affirm.

1

*Procedural background*

In the early morning of May 4, 2013, Marshall went to a convenience store in Wyandotte County to buy gas and K2. He gave the cashier, Maria Burris, a $20 bill and asked for $5 in gas and $15 in K2. Although some clerks at the store sold K2, Burris did not and she refused to sell any to Marshall. When Burris told Marshall she would not sell K2 to him, he became upset. The two exchanged words. During this time, Burris was in an enclosed area of the store, where a glass partition separates the cashiers from the customers.

As Burris and Marshall argued, Marshall moved to the door of the enclosed area. The door was unlocked, and Marshall was able to enter. Burris kicked Marshall, and the two began to struggle. Marshall eventually placed Burris in a chokehold, and she started to go in and out of consciousness and may have briefly passed out. According to Marshall, he was attempting only to control Burris. But he also admitted that he was stronger than Burris, could beat her up, and was in complete control of the situation.

While he had Burris in a chokehold, Marshall took four packs of K2—the amount he believed was equivalent to $20—from a box under the counter. Marshall testified that Burris told him, even though she was in a chokehold, where to find the K2 and that his $20 bill was in her pocket. Burris testified, however, that she did not think Marshall offered her money while she was in the chokehold and that she did not give him permission to take the K2.

After taking the K2, Marshall stood up, with Burris still in the chokehold, and moved toward the door of the enclosed area. He then released Burris and pushed her away. Once free, Burris locked the door to the enclosed area and activated the electronic lock on the store's front door. Realizing that he was trapped, Marshall pushed and ran into the door. He also tried to escape by ripping out the lock's wires. Marshall then returned to

2

the register and asked Burris to let him out. He offered to pay for the K2, but Burris refused to accept his money and called 911. Police officers responded and arrested Marshall. He was charged with one count of attempted aggravated robbery.

During the investigation, police officers attempted to retrieve the surveillance video from the store but were unable to copy the video files. So instead, officers used a video camera to record the video as it played on the store's monitor. There were several camera angles, but the police officers did not record all of them, selecting only certain footage. Before trial, Marshall filed a motion in limine asking the district court to exclude the video, arguing that the police officers should have recorded the entire video, with all the angles, and that the omitted footage contained potentially exculpatory evidence. The district court held a hearing, denied the motion, and admitted the video at trial, after which the jury found Marshall guilty.

Before sentencing, a hearing was held and the district court asked defense counsel if there was a motion for a new trial. Defense counsel indicated that she did not believe that any trial errors had been made and that such a motion would be frivolous. A short recess was then taken so defense counsel could consult with Marshall. After the recess, defense counsel informed the district court that Marshall wished to have a new attorney, which the district court then appointed. The district court also acknowledged that Marshall had filed a pro so motion for appeal and construed it as a motion for a new trial. After holding a hearing on the motion, the district court found that the motion was untimely. Marshall was sentenced to 78 months in prison, with 24 months of postrelease supervision. He timely appeals.

*Admission of surveillance video*

Marshall first claims that the district court erred by admitting the surveillance video from the store. He specifically argues that he was denied a fair trial because the

3

State failed to properly preserve exculpatory evidence by not recording the entire video. Marshall also contends that the error of admitting the video contributed to the verdict and thus could not be harmless. This issue was preserved for appeal by defense counsel's objection at trial.

### A. *Standard of Review*

Appellate courts use a multistep analysis to review the admission of evidence. *State v. King*, 299 Kan. 372, 383, 323 P.3d 1277 (2014). We first consider relevance, which is defined as evidence that is probative and material. *State v. Shadden*, 290 Kan. 803, 817, 235 P.3d 436 (2010) (citing K.S.A. 60-401[b]). Whether evidence was probative is governed by an abuse of discretion standard and materiality is governed by a de novo standard. 290 Kan. at 817. The second step is to decide which legal principles or rules of evidence apply. This determination is also reviewed de novo. 290 Kan. at 817. The third step is the application of those rules or principles, which can involve reviewing the district court's discretion or considering matters of law. 290 Kan. at 817.

### B. *Relevance*

Relevant evidence is probative and material. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013). Evidence is material if it "'has a legitimate and effective bearing on the decision of the case and is in dispute.'" *State v. Garcia*, 285 Kan. 1, 14, 169 P.3d 1069 (2007). If it has "'any tendency in reason to prove'" a fact, the evidence is probative. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008) (quoting K.S.A. 60-401[b]). Because Marshall does not address the video's relevance in his brief, we deem this issue waived and abandoned. See *Boleyn*, 297 Kan. at 633. Further, because the video depicted the altercation between Marshall and Burris, it had a legitimate and effective bearing on the case. And since the video showed Marshall's actions while he was in the store, it had a

4

tendency in reason to prove what happened. Thus, the video was relevant. See 297 Kan. at 622.

*C. Preservation of Potentially Exculpatory Evidence*

The only legal principle or rule of evidence that Marshall points to in arguing that the video should not have been admitted is his assertion that police officers and prosecutors "have a duty to preserve and disclose potentially exculpatory evidence." Marshall claims that the admission of the video violated his due process rights. Although not mentioned, Marshall seems to be referring to *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). This consideration is a question of law that this court reviews de novo. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008).

According to *State v. Finley*, 273 Kan. 237, 241, 42 P.3d 723 (2002) (citing *Youngblood*, 488 Kan. at 58), the Due Process Clause does not impose an absolute duty on investigators to collect and preserve "all material that might be of conceivable evidentiary significance." If the State fails to preserve potentially useful evidence, a defendant's due process rights have not been violated unless the defendant shows that the State acted in bad faith. *State v. LaMae*, 268 Kan. 544, 550, 998 P.2d 106 (2000) (citing *Youngblood*, 488 U.S. at 58). The determination of bad faith "turns on the officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 268 Kan. at 551 (citing *Youngblood*, 488 U.S. at 57). Whether the State acted in bad faith is a question of fact. 268 Kan. at 551.

At the hearing on his motion in limine, defense counsel suggested that the police officers who recorded the video had knowledge of the exculpatory value of some of the footage. But defense counsel did not present any evidence or testimony showing that the police officers acted in bad faith. Nor did the district court make a bad faith finding. Nor does Marshall's brief on appeal point to any evidence that the police acted in bad faith.

He argues only that the State failed to preserve or disclose potentially exculpatory evidence by not recording the entire video and selecting only certain portions. Absent a showing of bad faith, Marshall's argument fails under *Youngblood*. See *State v. Butler*, No. 106,234, 2012 WL 4678215, at *4 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1248 (2013).

Further, Marshall has not shown that the omitted footage from the video likely was exculpatory. Marshall claims that the full video would support the defense's theory that Burris instigated the incident by taking Marshall's money without providing him K2 or gas and that Marshall was attempting only to reclaim his money or an equivalent amount of K2. But Marshall was charged with attempted aggravated robbery. Aggravated robbery is defined as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person," while inflicting bodily harm upon any person. See K.S.A. 2015 Supp. 21-5420(a), (b)(2) (aggravated battery); K.S.A. 2015 Supp. 21-5301(a) (attempt). The video that was admitted shows that Marshall went into the enclosed area of the store, struggled with Burris, put her in a chokehold, maintained complete control during the altercation, and took something from under the counter. So even if the omitted footage showed what Marshall purports—that Burris took his money and argued with him—it would not have exculpated him from acts giving rise to the charge of attempted aggravated robbery. Therefore, Marshall's due process rights were not violated and the district court did not err by admitting the video.

*Timeliness of Marshall's pro se motion for a new trial*

Marshall next claims that the district court erred by finding his pro se motion for a new trial untimely. Marshall states that because the "prison mailbox rule" should apply, his motion was timely. He also argues that because his motion alleged ineffective assistance of trial counsel and caused him to be unrepresented after he drafted it, he was entitled to have his motion heard on its merits.

6

*A. Standard of Review*

When reviewing a district court's denial of a K.S.A. 2015 Supp. 22-3501(1) motion for a new trial, this court uses an abuse of discretion standard of review. *State v. Soto*, 301 Kan. 969, 977, 349 P.3d 1256 (2015). Under this standard, a district court has not abused its discretion "if a reasonable person could agree with the district court's decision." *State v. Thomas*, 257 Kan. 228, 229, 891 P.2d 417 (1995). To the extent that this court is required to interpret K.S.A. 2015 Supp. 22-3501, our review is unlimited because statutory interpretation is a question of law. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

*B. Timeliness*

On a defendant's motion, a district court may grant a new trial if the interest of justice requires it. K.S.A. 2015 Supp. 22-3501(1). A motion for a new trial based on any other grounds other than newly discovered evidence "shall be made within 14 days after the verdict or finding of guilty or within such further time as the court may fix during the 14-day period." K.S.A. 2015 Supp. 22-3501(1). This 14-day statutory time limit is mandatory, not discretionary. *State v. Holt*, 298 Kan. 469, Syl. ¶ 5, 313 P.3d 826 (2013).

Marshall argues that because he was incarcerated, the prison mailbox rule should apply. Under this rule, a prisoner's pro se documents are deemed "filed" once the prisoner submits the documents to prison authorities for mailing. *Wahl v. State*, 301 Kan. 610, 615, 344 P.3d 385 (2015). But here, Marshall did not argue the prison mailbox rule before the district court, and the district court did not make a finding under that rule. The general rule is that issues not raised before the district court cannot be raised on appeal. *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008). Exceptions to that rule exist, see *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014), but to claim one of them, a litigant must comply with Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) and explain in

7

his or her brief why the issue is properly before the appellate court. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). Marshall has not provided such an explanation. Accordingly, his brief is insufficient, and he has abandoned any possible application of an exception permitting review of this issue. See 301 Kan. at 1044.

Since Marshall did not assert the prison mailbox rule in the district court and cannot assert it now for the first time on appeal, the sole question before us is whether the district court abused its discretion by finding Marshall's motion untimely under K.S.A. 2015 Supp. 22-3501(1). Marshall was convicted on May 20, 2014. He drafted his pro se motion on June 2, 2014. The motion was filed with the court clerk on June 9, 2014. But the deadline was June 3. The district court noted that there were no intervening weekends in between June 3 and June 9 and that the clerk's office was otherwise accessible to Marshall. At the hearing on Marshall's motion, defense counsel suggested that Marshall probably submitted his motion on June 2. But the record does not indicate when the motion was actually submitted to the clerk's office. A reasonable person thus would conclude, as the district court did, that Marshall's motion was not filed until June 9, which was several days past the statutory time limit, making it untimely.

Nor does the record indicate when Marshall submitted his motion to prison authorities for mailing. As mentioned, defense counsel suggested at the hearing on Marshall's motion that Marshall probably submitted his motion on June 2, but no other evidence was presented on the issue. Marshall does not address in his brief the issue of when he submitted his motion, arguing only that this court should apply the prison mailbox rule. But this court cannot determine when Marshall's motion was submitted to prison authorities because the motion was not included in the record. As the appellant, Marshall bears the burden of designating a record on appeal that "affirmatively shows prejudicial error." See *State v. Sappington*, 285 Kan. 176, 192, 169 P.3d 1107 (2007). Because this court is without such a record, we presume that the district court's action was proper. 285 Kan. at 192.

*C. Unrepresented by Counsel*

Marshall, citing *State v. Sharkey*, 299 Kan. 87, 322 P.3d 325 (2014),  also claims that because his motion for new trial alleged ineffective assistance of trial counsel, he was immediately unrepresented by counsel, which was a critical stage of the proceedings, and that he thus should have had his motion heard even though it was untimely. In *Sharkey*, the defendant filed two pro se motions, which the court deemed motions for a new trial. The court held that the motions were a critical stage of the proceedings, thus the defendant had a Sixth Amendment right to conflict-free counsel at the motion hearing. 299 Kan. at 96. *Sharkey* found that because of his attorney's conflict of interest, the defendant was constructively denied his right to counsel. 299 Kan. at 101.

But *Sharkey* is distinguishable. Both the motions in *Sharkey* were timely. Marshall's motion was untimely. And the court in *Sharkey* noted that several federal Circuit Courts of Appeal have determined that untimely motions for a new trial are collateral proceedings that do not carry with them the right to counsel. See 299 Kan. at 94. The court adopted the same position, finding "there is no Sixth Amendment right to the assistance of counsel when a preappeal motion for new trial is untimely," thus a district court may rule on an untimely motion without appointing counsel for the defendant. 299 Kan. at 94 (citing *State v. Kirby*, 272 Kan. 1170, 1192-96, 39 P.3d 1 [2002] *State v. Kingsley*, 252 Kan. 761, 766-67, 851 P.2d 370 [1993]). Because Marshall's motion was untimely, it was not a critical stage of the proceeding. 299 Kan. at 94-95. Thus, Marshall's reliance on *Sharkey* is misplaced.

Further, nowhere in *Sharkey* did the court state or suggest that being denied counsel at a critical stage in the proceedings somehow extended the time limit for motions for a new trial under K.S.A. 2015 Supp. 22-3501(1). The issue in *Sharkey*, moreover, was whether the defendant had representation at the hearing to argue the motion, not whether he had representation at the moment he filed the motion. 299 Kan. at

9

91, 96. Ultimately, *Sharkey* is irrelevant to this case, and we find no authority in support of Marshall's position that a district court is required to hear an untimely pro se motion for a new trial on the merits when that motion alleges ineffective assistance of counsel. The district court therefore did not abuse its discretion by finding that Marshall had filed his motion out of time.

Affirmed.