NOT DESIGNATED FOR PUBLICATION

No. 119,910

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY J. MARTINEZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed August 23, 2019. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Mitch Spencer*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: The jury convicted Anthony J. Martinez of fleeing or eluding a police officer, theft, driving without a driver's license, and leaving the scene of an accident involving property. The district court sentenced him to 22 months in the custody of the Kansas Department of Corrections (KDOC) and 12 months of postrelease supervision. Martinez appeals.

1

FACTS

On July 20, 2017, at 10:36 p.m., Kansas Highway Patrol (KHP) Trooper Mike Konrade attempted to stop Martinez as he was driving a vehicle reported as stolen. Martinez did not stop, instead he sped up, reaching speeds up to 113 miles per hour. The high-speed chase ended when Martinez crashed into another vehicle. He then climbed out of the window of the vehicle and ran from the scene. Konrade notified dispatch of the incident and then ran after Martinez. He lost sight of Martinez and returned to the accident scene. Konrade looked inside the vehicle and found a bank card with Martinez' name on it and one black Nike shoe. He informed other units that the suspect was likely wearing only one shoe.

At 12:30 a.m., Sumner County Deputy Sheriff Steven Williams set a search perimeter on a turnpike overpass and informed officers he had heard an engine revving on the road behind him; it sounded like a motorcycle or ATV. KHP Trooper Scott Koehn responded to Williams' location. In the ditch at the side of the road, Koehn found a black Yamaha motorcycle with a black Nike shoe near the gas tank. Koehn took a picture of the shoe and sent it to Trooper Konrade. They concluded the shoe found by the motorcycle matched the shoe in the vehicle.

The motorcycle was registered to Dustin Stuber. Deputy Sheriff Leslie Walschmidt went to Stuber's house to confirm it was his motorcycle. Stuber confirmed he owned a motorcycle and stated it was in his garage. When they went to the garage, Stuber's motorcycle was gone and the garage's side door was wide open. Deputies took Stuber to the motorcycle in the ditch and he confirmed it was his. Stuber estimated the motorcycle was 100 yards from his house, just around the corner. Because of the extensive damage, the insurance company subsequently totaled out the motorcycle.

Law enforcement concentrated its search to a smaller area after a resident called dispatch and reported a male running through his yard. At around 2:30 a.m., Haysville Police Officer Randy Nowack saw a residence with an open gate. As deputies approached the residence, Nowack saw Martinez lying on the roof of the house. The officers identified themselves and ordered him to put his hands up. Martinez eventually put his hands up and came down from the roof. Martinez was not wearing shoes. He had only socks on his feet. Nowack observed Martinez to have severe road rash on his back. Nowack testified he had been in a motorcycle wreck before and knew what road rash looked like. He reportedly could see some of the "meat" of Martinez' bloodied back. Law enforcement officers took Martinez to the hospital. Once Martinez was medically cleared, he was transported to the Sumner County Detention Facility.

At 8 a.m., on July 21, 2017, Trooper Konrade interviewed Martinez in the prebooking room of the detention facility. Though there were two recording systems in the prebooking room, Konrade did not think about recording the conversation. Because Martinez had provided a false name the previous night, Konrade had gone to the jail to make sure deputies had the correct identification.

Konrade questioned Martinez about the previous night. He asked Martinez if he had stolen the motorcycle, to which Martinez replied that he had seen it on the side of the road. When asked from where he had gotten the motorcycle, Martinez said he got it "where it was at." He told Konrade that he "dumped the bike" when he rounded the corner and saw somebody standing on the bridge. Martinez agreed he had only one shoe on when he left the vehicle after the wreck and he lost the other shoe when he dumped the motorcycle. Martinez "smiled and laughed" when he told Konrade he had been wearing Reebok shoes.

Contrary to Trooper Konrade's assertions, Martinez insisted he had been wearing shoes when officers found him on the roof. He testified the officers took his shoes when

3

they arrested him. They then planted the shoes in the car and by the motorcycle for the pictures. He later said officers did not plant the shoes in the car because he had three pair of shoes sitting in the backseat. However, he stated no black Nikes were in the backseat as those were the shoes he was wearing upon arrest. Martinez also testified he knew nothing about the motorcycle other than he had seen it in the ditch when he ran by.

The State charged Martinez with fleeing or eluding a police officer, aggravated burglary, theft, interference with law enforcement, driving without a driver's license, and leaving the scene of an accident involving property. Following the preliminary hearing, the district court did not bind Martinez over for interference with law enforcement.

On March 22, 2018, Martinez moved to suppress Trooper Konrade's testimony for failure to preserve the video of the interview. He claimed that any potentially exculpatory evidence had been lost. On April 24, 2018, Martinez filed a pro se motion to suppress Konrade's testimony based on him being "out of sorts" when Konrade interrogated him. He claimed he was under the influence of alcohol and drugs and so could not provide a voluntary statement at that time.

The district court heard Martinez' motions on June 18, 2018. Deputy Andrew Yoder, Jail Administrator with the Sumner County Detention Facility, testified the jail has two recording systems in the prebooking room. One system requires officers to place a DVD into the recording device and press record. The other system is a passive system that records when the motion sensors in the room are triggered. The passive system records onto a hard drive and deputies only save recordings onto DVDs when requested by arresting officers. Because of the amount of activity in the prebooking room, the hard drive automatically records over footage approximately every two weeks. Here, nobody inquired about the passive system recording until two to three months after the incident. When Yoder checked, the system had already recorded over the interview.

4

Konrade testified he only knew of the active recording system and did not think about recording the interview. Officers generally use the passive system to record field sobriety tests conducted in the prebooking room. Konrade testified he had never conducted field sobriety testing in the Sumner County jail but would have requested a recording of such testing if he had. Konrade stated he understood "exculpatory" to mean: "Basically saying that [Martinez] didn't do it or that would prove his innocence in it somehow." He stated there was nothing exculpatory during the interview.

The district court found the purpose of the exclusionary rule as it pertains to failure to preserve evidence is to punish officers. The court found Trooper Konrade had not failed to preserve the recording because he was trying to frame Martinez or because he was trying to destroy exculpatory evidence. The court determined Konrade had "highway patrolman mentality" in which the only important crimes are DUIs and all other crimes are secondary. The court found Konrade could testify to what he recalled from the interview and the issue of preservation did not go to admissibility but to the weight of the evidence.

The jury convicted Martinez of fleeing or eluding a police officer, theft, having no driver's license, and leaving the scene of an accident involving property. The jury did not convict him of aggravated burglary.

Before sentencing, Martinez moved for judgment of acquittal because the evidence was contrary to the convictions. He also moved for a mistrial based on the district court erroneously denying his pretrial motion to suppress Trooper Konrade's testimony. The district court found the State presented sufficient evidence to support the jury's verdict and its original ruling on the suppression of evidence was correct. The court denied both motions. The court sentenced Martinez to 22 months of imprisonment with the KDOC with 12 months of postrelease supervision. Martinez appeals.

5

ANALYSIS

*Motion for Mistrial*

Martinez claims the district court erred in denying his motion for a mistrial by finding it had properly allowed Trooper Konrade's testimony. The motion asserted the court should have suppressed Konrade's testimony because by not requesting the recording of the interview in the prebooking room, Konrade failed to preserve potentially exculpatory evidence and violated Martinez' due process rights. He asserts the State acted in bad faith because the two-week retention period is unreasonably short and Konrade failed to record the interview though he knew he could have.

We review a district court's decision denying a motion for mistrial using the abuse of discretion standard. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Moore*, 302 Kan. 685, 699, 357 P.3d 275 (2015).

Failure to preserve potentially useful evidence does not constitute a due process violation unless the defendant shows the State acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). A bad faith determination is a question of fact. *State v. LaMae*, 268 Kan. 544, 551, 998 P.2d 106 (2000). Martinez thus challenges the district court's determination as an abuse of discretion, alleging the court based its determination on an error of fact. We review the district court's findings of fact to determine whether they are supported by substantial competent evidence sufficient to support the court's legal conclusions. *State v. Finley*, 273 Kan. 237, 241, 42 P.3d 723 (2002).

Whether a law enforcement officer acted in bad faith hinges on the "officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 57. Black's Law Dictionary 171 (11th ed. 2019) defines "bad

6

faith" as "[d]ishonesty of belief, purpose, or motive." Martinez first argues the unreasonably short retention period of recordings constitutes bad faith by the State. He then asserts bad faith by Trooper Konrade by failing to record the interview.

*Two-Week Retention Period*

Martinez argues that the two-week retention period is unreasonably short. He contends most defendants do not have counsel appointed to request the recording by that time and expecting defense counsel to move to preserve evidence on the day of appointment is unreasonable and unfair. He claims that permitting evidence to disappear after two weeks is bad faith per se.

Martinez argues that *California v. Trombetta*, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), provides that destroying evidence with apparent exculpatory value when a defendant could not otherwise obtain comparable evidence violates a defendant's due process rights. While he focuses on the destruction of potentially useful evidence, he fails to address the requirement that the exculpatory value of the evidence must be apparent to the officer before its destruction. 467 U.S. at 489; see *Youngblood*, 488 U.S. at 57-58. His mere assertion that the recording may have contained exculpatory evidence is insufficient. Martinez provides no information as to what potentially exculpatory evidence may have been in the recording. Trooper Konrade testified that he understood "exculpatory" to mean, "[b]asically saying that he didn't do it or that would prove his innocence in it somehow." He then confirmed that the recording would not have included any exculpatory evidence.

Like the officers in *Trombetta*, the State "'acted in good faith and in accord with their normal practice.'" 467 U.S. at 488. Deputy Yoder testified that as a detention deputy, he asked arresting officers if they wanted him to record DUI investigations, but only about half of the agencies taking arrestees to the Sumner County Detention Facility

knew about the recording system and only half of the time the detention deputies asked if arresting officers wanted them to record the investigations. He noted it was not the duty of the detention deputies to ask, but some would.

Under K.S.A. 2018 Supp. 22-4620(a), all law enforcement agencies are to adopt policies about recording custodial interrogations. K.S.A. 2018 Supp. 22-4620(e)(1) only requires agencies to record custodial interrogations that concern homicide or felony sex offenses. Martinez has not argued that the failure to record or preserve the recording is contrary to either the Sumner County Sheriff's Office interrogation recording policy or that of the Kansas Highway Patrol. The State abided by the procedures that were in place at the time and the Sumner County Sheriff's Office has since changed procedures to ensure against destruction of potentially useful evidence.

In conclusion, *Trombetta* did not create a per se rule against destruction of evidence. Though the two-week retention period is short, Martinez failed to show what exculpatory evidence may have been on the recording. The State acted in good faith and has implemented new procedures to ensure potentially useful evidence is not destroyed. The district court did not allow Trooper Konrade to testify based on an error of fact and, so, did not abuse its discretion. Therefore, the district court properly denied Martinez' motion for mistrial.

*Failure to Record*

Next, Martinez asserts that Konrade knowingly failed to use the DVD recording system and his failure to request the recording from the passive system constituted bad faith. Konrade testified that he had never conducted DUI investigations in the Sumner County Detention Facility and had never used the recording systems. He knew the facility had a camera that always recorded but did not know there were two recording systems available. Konrade explained he did not intend to record the interview because that was

8

not his purpose in going to the Sheriff's Office. He "just didn't think of [recording the interview]."

The district court determined Konrade had not acted in bad faith when he failed to record or request the recording. The court found no evidence Konrade failed to preserve the recording because he was framing Martinez or intentionally destroying exculpatory evidence. The court considered Konrade to have a "highway patrolman mentality" in which he is only concerned about DUI investigations and finds all other crimes secondary. The court held Konrade's testimony was admissible and the lack of video support would go to the weight of the evidence.

Martinez makes only a conclusory statement that Trooper Konrade's failure to record constituted bad faith but fails to show how. His citations to cases in which officers' dashcam videos were case determinative are inapplicable. While the cases show the benefit of video recordings in trial, they do not pertain to the issue at hand. As above, Martinez shows no bad faith beyond his assertion that Konrade's failure to preserve should fall under a per se rule and he has failed to show that the video would have likely contained exculpatory evidence.

In conclusion, Martinez again seeks a per se rule of bad faith where one does not exist. He shows no bad faith beyond his conclusory statement that failing to record the interrogation should be deemed bad faith. Martinez also fails so explain what potentially exculpatory evidence may have been on the recording. The district court did not make its determination based on an error of fact and, so, did not abuse its discretion. Therefore, the district court properly denied Martinez' motion for mistrial.

*Sufficiency of the Evidence*

Martinez next argues the State presented insufficient evidence to show beyond a reasonable doubt that he committed theft.

Under K.S.A. 2018 Supp. 21-5801(a), "Theft is any of the following acts done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services: (1) Obtaining or exerting unauthorized control over property or services." Martinez contends the State failed to show that he exercised control over the motorcycle. He does not contest the other elements of the offense. He admits that a jury may infer that a defendant committed theft from the circumstances but argues the circumstances here do not support such an inference.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Though Martinez correctly argues that no witnesses observed him with the motorcycle, "even the gravest offense may be sustained by circumstantial evidence." *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990). For circumstantial evidence to be sufficient, it "'need not rise to that degree of certainty which will exclude any and every other reasonable conclusion.' Instead, circumstantial evidence 'affords a basis for a reasonable inference by the jury' regarding a fact at issue. [Citations omitted.]" *State v.*

10

*Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). With a conviction based on circumstantial evidence, "'the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.'" *State v. Williams*, 229 Kan. 646, 649, 630 P.2d 694 (1981) (quoting 1 Wharton's Criminal Evidence § 91, pp. 150-51 [13th ed. 1972]).

When viewed in the light most favorable to the State, the evidence shows the high-speed chase began at around 10:36 p.m. on July 20, 2017. From the time Trooper Konrade activated his lights to the time of the accident, Martinez had driven about 9.5 miles. After Martinez ran from the vehicle, Konrade found one black Nike tennis shoe in the vehicle and informed other law enforcement officers that the suspect was likely wearing only one shoe.

At approximately 12:30 a.m. on June 21, 2017, Deputy Williams heard an engine revving behind him as he set a search perimeter. Trooper Koehn responded to the area and discovered the black Yamaha motorcycle in the ditch on the northside of the road with a black Nike tennis shoe near the gas tank. Koehn took a picture of the shoe and sent it to Trooper Konrade. They compared the shoe found near the motorcycle with the one from the vehicle and concluded the shoes matched. When Koehn responded to a report of somebody running through a backyard, Williams remained with the motorcycle. He photographed the motorcycle and shoe before collecting the shoe as evidence.

At around 2:30 a.m., Officer Nowack found Martinez on the roof of a house. When Martinez got down from the roof, he matched the description Trooper Konrade had provided of the suspect and Martinez was wearing only black socks on his feet, no shoes. Nowack also described Martinez' wounds on his back as "road rash," stating that he had been in a motorcycle wreck before and he knew what road rash looked like. The damage to the motorcycle suggested some type of accident.

11

Trooper Konrade testified that when he interviewed Martinez in the prebooking room at the detention facility, Martinez told Konrade that he had seen the motorcycle on the side of the road and he got the bike from "where it was at." Martinez admitted to Konrade that he "dumped the bike" before the bridge because he saw law enforcement on the bridge. Stuber, the motorcycle owner, testified he did not give anyone permission to take his motorcycle.

The State presented evidence sufficient to support a finding beyond a reasonable doubt that Martinez obtained or exerted unauthorized control of the motorcycle. He does not challenge the remaining elements. Thus, all elements of theft have been satisfied.

Affirmed.