IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,792

STATE OF KANSAS,
*Appellee*,

v.

CAMERON MICHAEL TAYLOR,
*Appellant*.

SYLLABUS BY THE COURT

1.

The test for cumulative error considers whether all the identified errors substantially prejudiced the defendant to the extent they affected the trial's outcome given the totality of the circumstances. To do this, an appellate court examines all the errors in context, considers how the district court dealt with them, reviews the nature and number of errors and whether they are connected, and then weighs the strength of the evidence.

2.

If any errors being aggregated for a cumulative error analysis are constitutional, the test from *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), applies, and the party benefiting from the aggregated errors must establish beyond a reasonable doubt their cumulative effect did not affect the trial's outcome.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 30, 2020. Appeal from Finney District Court; RICKLIN PIERCE, judge. Opinion filed October 8, 2021. Judgment of the Court of Appeals affirming in part and reversing in part the district court is reversed on the issue subject to review. Judgment of the district court is reversed, and the case is remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Tomas Ellis*, assistant county attorney, argued the cause, and *William C. Votypka*, deputy county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: A jury found Cameron M. Taylor guilty of possession of marijuana, battery against a law enforcement officer, and intentional criminal threat. A Court of Appeals panel reversed the marijuana conviction and ordered a new trial on the possession charge. The panel also identified four other trial errors relating to the remaining convictions but determined they were individually and collectively harmless. Taylor seeks our review of that cumulative error holding. We reverse the panel and reverse Taylor's convictions of battery against a law enforcement officer and intentional criminal threat. We remand the case to the district court with directions to grant a new trial on those two charges as well.

## FACTUAL AND PROCEDURAL BACKGROUND

Garden City Police Officer Richard Colburn stopped Taylor, who was walking down a street in a residential neighborhood. Officer Jairo Armenta arrived to provide backup. Colburn did a pat-down search of Taylor. He said he smelled marijuana and felt a soft object in Taylor's pocket, which turned out to be marijuana. The officers arrested Taylor and took him to a patrol car.

According to the officers, Taylor physically resisted, broke free, and head-butted Armenta, who testified the blow split his lip and that he cut his finger in the struggle. The

2

officers transferred Taylor to jail, where they said Taylor threatened Armenta by saying: "'I'll be seeing you.'" Sergeant Gary Kuenstler, who was also present, testified he heard "some talking on" but did not know what it was. When he looked up, he testified he saw Taylor staring at Armenta in an aggressive manner.

At trial Taylor testified and generally denied the charges against him. He said he heard Colburn tell him to stop walking but did not comply until Colburn pulled a gun, saying, "'If you don't stop, . . . I will pop your bitch ass.'" Taylor then turned around and put up his hands. He got down on his knees, asking: "'What's going on, why are [you] doing this?'" He said Colburn handcuffed him and hit him twice, saying: "'You like to beat up cops?'" When asked what he thought that meant, Taylor explained that in 2015 he was charged twice with battery on a law enforcement officer and found not guilty both times. Taylor also said Colburn and Armenta held his arm and took him to the patrol car. He asked why they were doing this, and they said they were looking for a gun. Taylor then asked, "'You found no gun, why am I being arrested?'" Armenta responded, "'Shut your mouth.'" Taylor spoke to Colburn saying: "'You better tell your officer to show me some respect.'" He said Armenta then hit him in the face.

The jury convicted Taylor of possession of marijuana, battery against a law enforcement officer, and intentional criminal threat. He appealed. A Court of Appeals panel found five trial errors: the denial of the motion to suppress, two prosecutorial violations of the in limine orders, and two prosecutorial errors committed during closing argument. It reversed the possession conviction, ruling that the district court should have suppressed the drug evidence. It found the other four errors were neither individually nor collectively reversible. *State v. Taylor*, No. 118,792, 2020 WL 6371061, at *1, 14-15 (Kan. App. 2020) (unpublished opinion).

3

Taylor petitioned this court for review of the panel's cumulative error decision, which we granted. The State did not cross-petition for review of the panel's other trial error holdings, so those are settled in Taylor's favor. See Supreme Court Rule 8.03(c)(3) (2021 Kan. S. Ct. R. 57) ("The purpose of a cross-petition is to seek review of specific holdings the Court of Appeals decided adversely to the cross-petitioner.").

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

THE CUMULATIVE ERROR ANALYSIS

Our only issue is the panel's cumulative error holding that denied Taylor a new trial on the remaining convictions. We exercise unlimited review over cumulative error claims. *State v. Walker*, 308 Kan. 409, 425, 421 P.3d 700 (2018). To do so, we must first detail some additional facts about all five trial errors to better understand how they occurred and what effect they had on Taylor's right to a fair trial.

*Error one:  the district court's denial of Taylor's motion to suppress*

Taylor moved to suppress the marijuana evidence as the product of an unlawful police detention that violated the Fourth Amendment to the United States Constitution. The district court held an evidentiary hearing on the motion at which Colburn was the only witness. The officer conceded Taylor was "just walking" without showing any suspicious activity. He said he had two reasons for stopping Taylor:  he was in a "high drug traffic area," and he had received a "roll call bulletin" five days before the incident from another officer that Taylor was "armed with a handgun . . . and possessing

4

methamphetamine." Colburn admitted he would not have stopped Taylor but for those two reasons.

The district court denied the suppression motion, reasoning the initial stop was lawful under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). It also ruled Colburn's testimony about the marijuana smell and feeling the soft object in Taylor's pocket during the pat-down provided probable cause to search. The Court of Appeals disagreed.

The panel held Colburn had no valid reason for the stop. *Taylor*, 2020 WL 6371061, at *5. It also determined that since the detention violated the Fourth Amendment, "Colburn's pat-down search, yielding the marijuana, flowed directly and really inextricably from his unconstitutional seizure of Taylor." 2020 WL 6371061, at *5. And because "[t]here was no causal break or intervening event attenuating the seizure and the search," the panel held the district court erred by denying the motion to suppress. 2020 WL 6371061, at *5. The panel reversed the marijuana conviction, vacated the sentence associated with that conviction, and remanded the case with instructions to grant Taylor a new trial on the drug charge. 2020 WL 6371061, at *5.

*Errors two and three: the prosecution's violations of the court's in limine orders*

Before trial, the defense requested that jurors not hear evidence about the "roll call bulletin" alleging Taylor possessed a handgun and methamphetamine. The court agreed, limiting the prosecution to mentioning this to just show Colburn "heard the roll call about the weapon and methamphetamine and that's it." The court explicitly directed the prosecution could mention this only once: "I don't want any more repeating or anything else." The court also prohibited the officers from characterizing the neighborhood where

they found Taylor as "a high crime or high drug area," explaining: "the prejudice far outweighs the probative value to characterize the neighborhood."

At trial, the prosecution violated the first order by eliciting testimony from Colburn about a second "roll call bulletin" involving Taylor. 2020 WL 6371061, at *9-10. The exchange was:

"Q. . . . Officer Colburn, was there any information relayed to you on April 21st of 2017?

"A. Yes, sir.

"Q. And what was that information?

"A. Uh, on April 25th, uh, when I attended roll call, uh, Detective Birney, um, received information, and placed it in a roll call bulletin, stating that Mr. Taylor would be in—possibly be in possession of a .380 pistol."

The court overruled a defense objection. The testimony continued:

"A. He was in possession of a . . . handgun, or pistol, and possibly a large amount of methamphetamines.

"Q. . . . *Was that the only roll call that you received regarding Mr. Taylor?*

"A. [*N*]*o, sir.*

"Q. *When did you receive another roll call—*

"A. Uh, on that same—" (Emphases added.)

6

The defense objected again. The court held a bench conference during which the prosecution tried to explain the second inquiry aimed to clarify the inconsistent dates of the roll call between the question (April 21) and the answer (April 25). The court noted its order allowed only the single mention of the roll call. The prosecution asked the court's permission to explain the exact date Colburn received the information. The court rejected that, saying "[when] it becomes cumulative[, i]t becomes—the prejudice far outweighs the probative value." The trial resumed without the court taking any curative action, such as instructing the jury to disregard the second question.

The prosecution twice violated the second order about characterizing the neighborhood. *Taylor*, 2020 WL 6371061, at *9-10. The first time occurred when the prosecution asked an open-ended question about what happened. Colburn answered: "I observed a male walking on foot. I knew that to be . . . Taylor. . . . [W]ith the information that I had, . . . *and in that area*, within that last two weeks—." (Emphasis added.) Both parties cut off Colburn before he said anything else. Another bench conference ensued during which the court said it believed the prosecutor was not a fault because the witness simply made a voluntary statement. It also said the officer did not go "very far either." The court then directed Colburn not to say anything about the neighborhood's negative characterization and, at the same time, allowed the parties to clarify the area was a residential neighborhood. When the trial resumed, the prosecution asked about the residential nature of the neighborhood through Colburn's testimony:

> "Q. . . . So you observed Mr. Taylor at the 1500 block of Gibson Avenue?
>
> "A. Yes, sir.
>
> "Q. And is that a residential neighborhood?
>
> "A. It is."

7

But the next day, the prosecution recalled Colburn. This time it directly asked him what kind of neighborhood he was in when he saw Taylor. The following colloquy occurred:

"Q. Officer Colburn, you previously testified that you had contact with Mr. Taylor on April 26, 2017; is that right?

"A. Yes, sir.

"Q. And this contact was at the 1500 block of Gibson in Garden City, Kansas; right?

"A. That's correct.

"Q. *And what kind of neighborhood is that?*

"A. Um, it's a residential neighborhood, um, and *I would consider it a high crime, high drug area*." (Emphases added.)

Defense counsel objected, which the court sustained. It admonished the jury "not [to] consider the comments that were made by the witness as to the . . . neighborhood there. It's only a residential neighborhood."

The panel ultimately determined these two errors were individually harmless to both the battery and threat convictions using the constitutional harmless error test. *Taylor*, 2020 WL 6371061, at *12. But it did not decide on the proper test to use when examining a violation of the order in limine. 2020 WL 6371061, at *10 ("We assume without deciding that the parties have correctly framed the errors and the governing analytical

8

principles. . . . [B]oth Taylor and the State analyze the [order] violations under the standard governing prosecutorial error.").

As to the roll call bulletin, the panel noted "[t]he improper testimony—a one-word answer to a single question from the prosecutor—established only that Taylor was the subject of more than one roll call report," and that this alone "could not have tipped the balance for the jury from not guilty to guilty." 2020 WL 6371061, at *12. As for Colburn's testimony about the neighborhood's character, the panel said it "was wholly divorced from the charges against Taylor for battery and criminal threat," and so it failed "to see any initial or residual prejudice against Taylor on those charges." 2020 WL 6371061, at *12.

*Errors four and five: the prosecutor's closing argument*

During closing arguments, the panel held the prosecution committed two errors. *Taylor*, 2020 WL 6371061, at *13-14. First, the prosecutor misstated the evidence by falsely saying Taylor had testified "Colburn walk[ed] up behind him and st[u]ck a gun to his head and sa[id], 'I will pop your bitch ass.'" The defense objected, correcting that Taylor had not said Colburn made physical contact with the gun. But the prosecution argued with the jury still present that Taylor had said Colburn "rubbed the gun against the back of his head" and "rubbed a gun on his hair," and asserted, "You've got to determine whether or not that's credible." The court sustained the defense objection, agreeing that the physical contact claim was unsupported by the evidence. Second, the prosecution improperly offered its opinion of Taylor's guilt. It argued, "Beyond a reasonable doubt means if you have any doubt, it's got to be reasonable. And based on the evidence we've presented, *we don't think there's any reasonable doubt*." (Emphasis added.)

9

The panel held the prosecutor committed error in both incidents. *Taylor*, 2020 WL 6371061, at *14. But it also held those errors were harmless to the battery and threat convictions. It reasoned the factual misstatement was "without any legal or factual significance," and that the prosecution's personal opinion hardly had any impact on the verdict. It also noted that "even taking the two errors in combination, they did not adversely affect the fairness of the trial." 2020 WL 6371061, at *14.

*The panel's failure to aggregate all errors*

The panel aggregated only four errors: two in-limine-order violations and two in closing argument. *Taylor*, 2020 WL 6371061, at *15. And it held their collective effect was insignificant on Taylor's convictions for battery and threat. 2020 WL 6371061, at *15. In doing so, the panel acknowledged: "the jurors had to give at least some credence to Taylor's claim that he had been framed to find him not guilty. After observing the officers and Taylor testify, they did not." 2020 WL 6371061, at *15.

But an appellate court aggregates all errors, even if they are individually reversible or individually harmless. The court must assess whether their cumulative effect on the trial's outcome is such that collectively they cannot be determined harmless. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). In other words, it must assess whether the totality of the circumstances substantially prejudiced the defendant and denied that defendant a fair trial. In making that determination, the court examines all the errors in context, considers how the district court dealt with them, reviews the nature and number of errors and whether they are connected, and then weighs the strength of the evidence.

The test from *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), applies if any of the errors being aggregated are constitutional. This means the

10

party benefiting from the errors must establish beyond a reasonable doubt that the errors' cumulative effect did not affect the trial's outcome. Here, because the State benefited from the errors, it has the burden to prove their cumulative effect was harmless. *State v. Thomas*, 311 Kan. 905, 914, 468 P.3d 323 (2020).

At the outset, it is readily apparent the panel erred in three distinctive ways in its cumulative error analysis. First, it failed to consider the district court's erroneous denial of the marijuana evidence in its analysis. Second, it failed to apply *Chapman*'s constitutional harmless error test, when at least three of the five errors implicated the Fourth and Fourteenth Amendments to the United States Constitution. Third, it failed to question whether the errors' cumulative effect savaged Taylor's credibility although it observed the jury's credibility determination affected the verdict.

These analytical missteps typically would justify a case's remand to the Court of Appeals to perform the appropriate analysis. See *Littlejohn v. State*, 310 Kan. 439, 447 P.3d 375 (2019) (remanding case to Court of Appeals with direction to perform analysis under correct legal standard). But since the panel already ordered a new trial on the marijuana possession charge, we believe judicial economy weighs in favor of completing the cumulative error analysis to move the case along for district court disposition. See *State v. Ibarra*, 307 Kan. 431, 433, 411 P.3d 318 (2018) ("Rather than remand to the Court of Appeals, we will—in the interest of judicial economy—consider the merits of Ibarra's claim.").

*The cumulative effects on the remaining two convictions*

We begin by noting the evidence supporting the battery and threat charges was far from overwhelming. See *State v. Brinklow*, 288 Kan. 39, 54, 200 P.3d 1225 (2009) ("Whether reversal is required by any one of the trial errors may be open to debate.

11

However, the cumulative effect of the errors prejudiced Brinklow's ability to obtain a fair trial. Given that the evidence against the defendant was not overwhelming, we must reverse the conviction and remand for a new trial."). For example, there were no audio or video recordings supporting those two charges because the officers' recording devices were not activated when Taylor allegedly head-butted and threatened Armenta. *Taylor*, 2020 WL 6371061, at *9. This left just the photographs depicting Armenta's injuries as the only physical evidence tending to corroborate the officers' testimony. And while those photos add weight to the officers' version of events, they cannot make the State's case overwhelming.

In *State v. Cosby*, 285 Kan. 230, 250, 169 P.3d 1128 (2007), the court held the State's case was not overwhelming even though "seven persons witnessed the [incident]" when there was conflicting evidence on the "truly contested issue." Here, the contested issues were: whether Taylor head-butted Armenta, and whether he threatened Armenta by saying "'I'll be seeing you.'" As to both of these, the evidence was conflicting, and none amounted to anything reasonably characterized as overwhelming. And the photo evidence alone did not show *who* caused the injury, so the jury still needed to disbelieve Taylor and believe the officers to connect the dots and make the State's case—a classic credibility contest during a trial.

As Taylor argues, the wrongfully admitted drug evidence alone would have undermined his credibility. In *State v. Brazzle*, 311 Kan. 754, 763, 466 P.3d 1195 (2020), the court identified "at least three types of prejudice that can arise from other crimes and civil wrong evidence." They are:

> "'First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that

12

the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, *the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed*.' [Citation omitted.]" (Emphasis added.) 311 Kan. at 763.

Although *Brazzle* differs from Taylor's case in that the former involved admission of evidence under K.S.A. 2019 Supp. 60-455 (other crimes and civil wrongs), the *Brazzle* court's rationale remains persuasive. In Taylor's case, the marijuana evidence's wrongful admission can be easily seen as prejudicing his right to a fair trial on the remaining battery and threat charges in at least two ways. First, it introduced the risk that the jury would simply punish him for the marijuana possession by convicting him on the other charges, even if they were not proven beyond a reasonable doubt. Second, and just as important, the improperly admitted drug evidence could not help but poison his credibility with the jury in deciding who was telling the truth about what happened. But there is more.

"[V]iolations of orders in limine have a prejudicial effect because the requisite for obtaining such orders is showing that the mere offer or reference to the excluded evidence would tend to be prejudicial. The primary purpose of an order in limine, after all, is to prevent prejudice during trial." *State v. Santos-Vega*, 299 Kan. 11, 25, 321 P.3d 1 (2014). In Taylor's case, the district court issued the in limine orders because it decided prejudice attached to the roll call bulletin and the neighborhood characterization outweighed their probative value. Given that, it is hard to agree with the panel that the damaging effect of those violations was "minimal" when aggregated with the other errors. See *Taylor*, 2020 WL 6371061, at *15. After all, the district court already performed the threshold prejudice analysis when restricting the jury's access to this information and there is no reason to ignore the lower court's conclusion.

13

Finally, the prosecutorial errors during closing arguments cannot be viewed as harmless when considered with the other errors. For example, one prosecutorial error occurred when the prosecution said Taylor "also said [an officer] had rubbed the gun against the back of his head. You've got to determine whether or not that's credible." This exaggerated Taylor's testimony to make it seem more incredible and it emphasized the importance of this exaggeration to the jury in weighing Taylor's credibility. The prosecution's misstatement could most certainly have made Taylor's testimony less believable.

Compounding this, the prosecutor's declaration that there was no reasonable doubt Taylor was guilty signaled directly to the jury the prosecutor's personal belief Taylor was lying. And despite the district court's standard instruction that the jury was to weigh the witnesses' testimony and not consider counsel's arguments to be evidence, this prosecutorial error cannot be underrated, even if we presume a jury typically follows the court's instructions. See *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017). As Taylor's case involved a credibility contest, especially on the battery and threat charges, his credibility was a paramount consideration for the jury.

Turning our attention to the criminal threat charge, the evidence there is even less substantial. It is not just conflicting, it is ambiguous. Recall that Sergeant Kuenstler, who was present at the time, testified he heard something but did not know what it was.

With the burden on the State to show harmless constitutional error, we hold the prosecution fails to establish beyond a reasonable doubt that the cumulative effect of all five errors did not affect the trial's outcome. Had the jury believed Taylor's version of the incident—or just found his testimony created a reasonable doubt—the jury would have been legally required to return not guilty verdicts on the battery and threat charges. See

14

*State v. Akins*, 298 Kan. 592, 613, 315 P.3d 868 (2014) (We reversed for prosecutorial misconduct based on improper credibility argument because "[t]here was no physical evidence of Akins' guilt, and he consistently and steadfastly maintained that he was innocent. So the jury was charged with deciding the case based on the testimony of witnesses, making their credibility of paramount importance.").

We reverse the two remaining convictions and remand the case to the district court with directions to grant Taylor a new trial.