NOT DESIGNATED FOR PUBLICATION

No. 125,836

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MITCHELL B. BOONE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; MICHAEL E. WARD, judge. Submitted without oral argument. Opinion filed October 18, 2024. Affirmed and remanded with directions.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: A jury convicted Mitchell B. Boone of driving under the influence, third offense. Boone timely appeals his conviction, arguing the district court erred in (1) denying his motion for directed verdict; (2) allowing the State to admit into evidence a recorded statement from an officer during Boone's interview at the jail that impermissibly commented on Boone's credibility; and (3) instructing the jury it may assume Boone was incapable of safely driving a vehicle based on his blood alcohol test results. Boone also argues the cumulative effect of such errors requires reversal of his conviction. After careful review, we find Boone's claims unpersuasive and affirm Boone's conviction.

1

On August 18, 2021, at 4:45 a.m., Lawrence police officer Ronald Ivener observed a truck with its headlights on partially parked on the sidewalk in the drop-off area of Lawrence High School. Ivener approached the vehicle and found Boone asleep in the driver seat of the vehicle with the keys in the ignition and the engine running. Ivener shut off the engine of the vehicle and noted a strong odor of alcohol on Boone's breath. Ivener shined his flashlight at Boone and announced his presence as a police officer to wake Boone up without startling him. Once Boone woke up, Ivener noticed Boone had watery bloodshot eyes. Boone told Ivener he had been drinking at a bar earlier.

Ivener conducted standard field sobriety testing on Boone, during which Boone showed signs of impairment. Ivener arrested Boone and transported him to the Douglas County Jail. Boone consented to a breath test which showed his blood alcohol concentration (BAC) was .181 percent. Boone's driving record reflected two prior driving under the influence (DUI) convictions.

The State charged Boone with driving under the influence, third offense, in violation of K.S.A. 2021 Supp. 8-1567(a)(3). At the close of the State's case-in-chief during Boone's jury trial, Boone moved for directed verdict, which the district court denied. The jury found Boone guilty of operating a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving.

Boone filed a motion for new trial, asserting the State failed to lay proper foundation for the admission of his breath test results. Boone asserted the improper admission of his breath test results prejudiced him by allowing the jury to *assume* he was incapable of safely operating his vehicle. The district court denied Boone's motion for new trial and sentenced him to 12 months in jail but suspended his sentence, ordered

2

Boone to serve 10 days in jail over 5 consecutive weekends of 48-hour increments, and placed Boone on house arrest with work release for 1,920 hours.

Additional facts are set forth as necessary.

ANALYSIS

I. THE DISTRICT COURT DID NOT ERR IN DENYING BOONE'S MOTION FOR DIRECTED VERDICT

Boone argues the district court erred in denying his motion for a directed verdict because the State failed to present sufficient evidence he was incapable of driving safely. Specifically, Boone argues the State presented insufficient evidence to establish he was driving under the influence of alcohol to a degree that rendered him incapable of safely driving because no one observed him operating the vehicle. Boone admits a bystander or officer does not need to observe erratic driving for a DUI conviction. See *State v. Blair*, 26 Kan. App. 2d 7, 7-8, 974 P.2d 121 (1999). Boone incorrectly suggests the only evidence offered to establish he was incapable of safely driving a vehicle was a breath test administered four hours after he was driving.

*Standard of review*

"A motion for directed verdict at the close of the State's case is essentially a motion for judgment of acquittal and is judged by the standards of sufficiency of the evidence." *State v. Wilkins*, 267 Kan. 355, 365, 985 P.2d 690 (1999). The standard of review for a sufficiency challenge in a criminal case requires us to review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. "There must be evidence supporting each element of a crime to meet the sufficiency of the evidence standard."

*State v. Hilyard*, 316 Kan. 326, 330-31, 515 P.3d 267 (2022). We will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. 316 Kan. at 331. It is only in rare cases in which the "evidence [is] so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

Ivener testified he has been a Lawrence police officer for over 13 years, underwent months of training to become an officer, and underwent specific training related to DUI cases and standardized field sobriety tests. Ivener recalled working the early morning hours of August 18, 2021, when he observed a suspicious pickup truck around 4:45 a.m. with its headlights on. Ivener explained the truck was in the student drop-off area of Lawrence High School and the two front wheels were up on the sidewalk.

Ivener testified he pulled up behind the truck and approached from the passenger side. The windows in the truck were rolled down, the engine was running, and an individual was sleeping in the driver's seat. Ivener could smell alcohol coming from inside the truck. Ivener then approached the driver's side of the truck and reached in to shut off the engine. Ivener noticed the smell of alcohol was much stronger from the driver's side of the truck and was coming from the person, not just the truck generally.

After turning off the truck's engine, Ivener shined his flashlight on Boone—the only individual inside the truck—and announced he was with the Lawrence Police Department. Boone was unsure how he got there and was nonresponsive to some of Ivener's questions. When Boone was asked how he got to his location, he responded, "That's a good question." Boone stated he drank "a little" and had stopped drinking around 1:30-2 a.m. Boone proceeded to provide Ivener inconsistent answers as to where he was heading and how he got to the high school. At one point, Boone said he was heading home from the bars; he also suggested he had been dropped off and mentioned he was going to a friend's house. Ivener testified Lawrence High School, where he found

4

Boone parked, was about halfway between the bar where Boone said he was drinking and Boone's house. Ivener testified he did not see any open containers in the truck's cab or bed.

Ivener observed Boone had droopy, bloodshot, and watery eyes; was slouched; and had slurred speech—indications Boone may be impaired. Boone agreed to perform field sobriety testing. Ivener explained the field sobriety tests to the jury and what he looked for as indicators of impairment. Ivener testified he went through the instructions for the sobriety tests with Boone, who stated he understood the tests and showed multiple clues of impairment.

Ivener arrested Boone and transported him to the Douglas County Jail where Boone consented to a breath test on the Intoxilyzer 9000. Boone's breath was tested at 5:50 a.m.—about four to four-and-a-half hours after Boone allegedly stopped drinking—and his BAC was .181 percent.

Ivener, as well as the other officer on the scene, Dustin Lister, recorded the entire interaction with Boone on their body cams. The State successfully admitted and published Ivener's and Lister's body cam footage and Ivener's dash cam footage. The body cam footage revealed shortly after Ivener woke up Boone, Ivener asked Boone where he was and where he was going. Boone responded, "I live here," and, in response to Ivener asking him where he was, Boone looked around and replied, "That's a good question." Ivener again asked Boone how he got his truck to the high school, and Boone answered, "I stopped driving after a while and I just, like, passed out right here." The various body cam and dash cam footage showed Boone's overall demeanor aligned with Ivener's testimony. Body cam and dash cam footage showed Boone had slurred speech; appeared unsteady, drowsy, and confused; and had provided inconsistent answers to Ivener's questions.

5

The evidence reflects Boone was driving his truck while intoxicated. Ivener found Boone partially parked on the curb in the high school drop-off area during non-school hours with no apparent reason for being there. The jury heard statements from Boone that he did not know where he was when Ivener first approached him and did not know how he got there. Boone admitted he was drinking a few hours before Ivener approached him, admitted he was trying to drive home from the bar, and stated he had passed out once he had parked his truck. The evidence strongly suggested Boone was drinking before he got in his vehicle and began driving as Ivener saw no open containers in the truck or the truck bed. This coincides with Boone's statements generally suggesting, though not explicitly stating, that he stopped drinking before he drove. Such evidence reflects Boone was drinking before he was driving and provides an overwhelming inference he was intoxicated while he drove.

In reviewing the evidence in the light most favorable to the State, a rational fact-finder could have found Boone guilty beyond a reasonable doubt of driving under the influence of alcohol to a degree that rendered him incapable of safely driving his truck. See K.S.A. 2021 Supp. 8-1567(a)(3).

II.   THE DISTRICT COURT DID NOT ERR BY ALLOWING THE STATE TO ADMIT IVENER'S RECORDED STATEMENTS INTO EVIDENCE

Boone asks us to reverse his conviction, claiming the district court erred in allowing the jury to hear Ivener impermissibly comment on Boone's credibility in a videotaped interrogation and such comment should have been redacted. The State counters, arguing Ivener's statement amounted to a reasonable inference drawn from Boone's conflicting stories of what had happened on the night and early morning in question. The State also contends, even if the district court erroneously admitted Ivener's statement, such error was harmless.

*Preservation*

At the beginning of trial, Boone asked the district court to redact a portion of his interrogation in which he believed Ivener commented on his truthfulness. The district court denied Boone's request for the statement to be redacted from the video interrogation. Boone again timely objected to the admission of the videotaped interrogation during the trial and asked for a continuing objection. The district court acknowledged Boone's objection, granted a continuing objection, and admitted the videotaped interrogation into evidence. Boone, therefore, properly preserved this issue for appeal. See K.S.A. 60-404.

*Standard of review*

Generally, admissibility of evidence is subject to an abuse of discretion standard. *State v. Elnicki*¸ 279 Kan. 47, 50, 105 P.3d 1222 (2005). Our Supreme Court explained: "[T]he trial court has no discretion on whether to allow a witness to express an opinion on the credibility of another witness; such evidence must be disallowed as a matter of law." 327 Kan. at 53-54. As such, the proper standard of review with respect to the admissibility of credibility comments is de novo. 327 Kan. at 51.

*Merits*

It is a well-known rule that a witness may not express an opinion on the credibility of another witness. The determination of the truthfulness of a witness is for the jury. See *State v. Green*, 311 Kan. 960, 992, 469 P.3d 1228 (2020). Opinions about the veracity of the defendant are not permitted from the witness stand and are also prohibited when they are played on videotape. *Elnicki*, 279 Kan. at 57. But the State is "permitted 'to point out inconsistencies in a defendant's statements and to argue evidence that reflects poorly on a defendant's credibility.'" *State v. Brown*, 300 Kan. 542, 560, 331 P.3d 781 (2014). In

*State v. Finley*, 273 Kan. 237, 245, 42 P.3d 723 (2002), the defendant claimed, among other things, the prosecutor committed error by expressing her opinion on defendant's testimony as "'incredible'" and "'virtually impossible to believe.'" Our Supreme Court found: "The prosecutor based her argument on an inference drawn from the nature of the defendant's conflicting stories, not on the prosecutor's knowledge of the defendant's veracity." 273 Kan. at 246.

Boone heavily relies on *Elnicki* to support his position. However, *Elnicki* differs from this case. There, a jury heard a videotaped interrogation of the defendant in which the police officer repeatedly told the defendant "he was a liar," he was "'bullshitting'" the officer, and he was "'weaving a web of lies.'" 279 Kan. at 57.

Here, the statement at issue occurred during Boone's interrogation at the jail. During the interrogation, Ivener asked Boone where he was heading, whether he was driving his truck, and how his truck got to the high school. Boone provided inconsistent answers from what he had told Ivener at the scene. In response, Ivener stated, "On scene you were straight up with me and now it seems like you're trying to make up a story." Boone responded, "Boom, you got me." The district court addressed Boone's objection to the statement, explaining:

> "I don't think this went that far, I think this is Officer Ivener pointing out to the defendant, during the course of the interview, that he has now provided some information that is different and inconsistent with what the defendant previously told the officer. And he may have not said it all that artfully, I suppose he could've said, the statement you just provided is not consistent with your earlier statement that you provided.
> "Instead he said, it seems to me like you're trying to make up a story now, at the scene you were straight with me. So, yes, that is an opinion, but I don't think that is the statement by an officer that would be violated of the standard of *Elnicki*."

Unlike *Elnicki*, Ivener did not directly, explicitly, or repeatedly call Boone a liar. Rather, Ivener noted Boone had provided inconsistent statements at the scene and during the interrogation. Boone seems to focus on Ivener's statement but not his own response, "Boom, you got me." Ivener's statement amounts to a comment on the inconsistency of Boone's statements throughout the night and was not an impermissible opinion on credibility.

Even if we considered the statement impermissible and found the district court should not have admitted it into evidence, the error was harmless. A witness' improper comment on the credibility of another witness is reviewed for harmless error under K.S.A. 60-261. *State v. Mullins*, 267 Kan. 84, 97, 977 P.2d 931 (1999). But see *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986) (expert testimony regarding victim's truthfulness was prejudicial and reversible error), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). *Jackson* is distinguishable because it dealt with expert testimony.

Another panel of our court recognized that "[t]he line differentiating whether a witness provides an opinion on an ultimate issue to be considered by the jury (which may be admissible) or expresses an opinion on a person's guilt or innocence (which is inadmissible as a matter of law) is not always clear." *State v. Johnson*, No. 122,243, 2020 WL 7636453, at *9 (Kan. App. 2020) (unpublished opinion). Here, the statement at issue provided a short comment made in the process of the investigation and was not a direct expression as to Boone's guilt.

Boone also asserts the admission of Ivener's statement violated his constitutional rights under the Fifth and Sixth Amendments to the United States Constitution. Specifically, Boone claims he had a right to a jury trial under the Sixth Amendment and a right to due process under the Fifth Amendment, which were violated when Ivener testified as to his credibility—an issue for jury determination.

9

Under the higher constitutional harmless error standard, the State bears the burden to establish "'beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict.'" *State v. Plummer*, 295 Kan. 156, 162, 283 P.3d 202 (2012); *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). As discussed earlier while addressing the sufficiency of the evidence, there was strong evidence presented to the jury that Boone was driving under the influence of alcohol to a degree that rendered him incapable of safely driving. Boone heavily relies on the facts no one observed him driving and there were no reports of an unsafe or reckless driver on the road. Boone's arguments ignore the substantial evidence presented, including two admissions he was driving home from the bar and body cam footage of Boone that showed multiple signs of impairment. In fact, very shortly after the statement Boone wanted redacted during his interrogation, he admitted he was driving home from the bar and provided the exact intersection he was driving to. Redacting Ivener's statement would not change the jury's verdict. The State established beyond a reasonable doubt Boone's trial was not impacted by Ivener's comment. Thus, if error, the statement's admission was harmless.

III.    THE DISTRICT COURT ERRED IN INSTRUCTING THE JURY AS TO THE STATUTORY PRESUMPTION IN K.S.A. 8-1005(b), BUT THE ERROR WAS HARMLESS

Boone argues the district court erred in instructing the jury it could assume he was under the influence of alcohol to a degree that rendered him incapable of driving safely if a breath test showed he had a BAC of .08 percent or more. Boone contends such instruction was legally and factually inappropriate and the district court's error in giving the instruction was not harmless. Boone asks us to reverse his conviction. The State suggests the jury instruction was legally and factually appropriate and, even if we find otherwise, any error is harmless considering the record in its entirety.

10

*Standard of Review*

When considering jury instruction issues, appellate courts first consider the reviewability of the issue from both jurisdiction and preservation viewpoints. Appellate courts then consider whether the instruction was legally and factually appropriate. *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018). We "'use an unlimited review to determine whether the instruction was legally appropriate [and] determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction.'" *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). Finally, if the district court erred, the appellate court must determine whether the error was harmless. *McLinn*, 307 Kan. at 317-18.

*Reviewability*

The appellate court's reviewability inquiry depends on whether a party properly preserved the jury instruction issue below. *McLinn*, 307 Kan. at 317. It is uncontested Boone timely objected to the instruction and preserved the issue for review.

*Factually appropriate jury instruction*

Boone argues the instruction was not factually appropriate. An instruction is factually appropriate if it is supported by sufficient evidence viewed in the light most favorable to the defendant or requesting party. *State v. Levy*, 313 Kan. 232, 241, 485 P.3d 605 (2021).

Boone claims, under K.S.A. 8-1005 and K.S.A. 2021 Supp. 8-1567, the Legislature intended to allow the admission of breath alcohol test results into evidence only if the breath test was administered within three hours of driving a vehicle. But K.S.A. 8-1005 provides that evidence of a BAC level may be admitted in "*any* criminal

11

prosecution for violation of the laws of this state relating to operating . . . a vehicle while under the influence of alcohol . . . ." (Emphasis added.) Boone was criminally prosecuted for such violation and had a BAC above .08 percent. Boone's argument stems from a different DUI offense under K.S.A. 2021 Supp. 8-1567(a)(2), which provides: "Driving under the influence is operating . . . any vehicle within this state while: . . . (2) the alcohol concentration of the person's blood or breath, as measured within three hours of the time of operating . . . a vehicle, is .08 or more." Boone was not charged or convicted under subsection (a)(2) but rather under subsection (a)(3), which prohibits driving "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." K.S.A. 2021 Supp. 8-1567(a)(3). The district court properly admitted Boone's BAC test as he was criminally charged for violating Kansas law relating to operating a vehicle while under the influence of alcohol. As part of the jury instruction at issue, the jury was instructed: "The test result is not conclusive, but it should be considered by you along with all other evidence in this case." The jury was also instructed to consider and weigh all evidence, determine the weight and credit to be given to witness testimony, and to use common knowledge and experience regarding the matter in which a witness testified. The jury instruction was factually appropriate.

*Legally inappropriate jury instruction*

Boone complains the jury instruction fails to fairly and accurately state the applicable law because it instructed the jury it *may assume* the existence of an element—a permissive presumption—when the statute, K.S.A. 8-1005(b), requires a mandatory rebuttable presumption. The jury instruction Boone challenges is derived from K.S.A. 8-1005, which states:

> "Except as provided by K.S.A. 8-1012, and amendments thereto, in any criminal prosecution for violation of the laws of this state relating to operating or attempting to operate a vehicle while under the influence of alcohol . . . , evidence of the concentration

of alcohol . . . in the defendant's blood, urine, breath or other bodily substance may be admitted and shall give rise to the following:

. . . .

"(b) If the alcohol concentration is .08 or more, it shall be prima facie evidence that the defendant was under the influence of alcohol to a degree that renders the person incapable of driving safely."

The jury instruction stated:

"The defendant is charged with operating a vehicle while under the influence of alcohol. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1.     Mitchell B. Boone operated a vehicle.
"2.     Mitchell B. Boone, while operating the vehicle, was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle.
"3.     This act occurred on or about the 18th day of August 2021, in Douglas County, Kansas.

"If a breath test shows the defendant had a breath concentration level of .08 percent or more, you may assume the defendant was under the influence of alcohol to a degree that he was rendered incapable of driving safely. The test result is not conclusive, but it should be considered by you along with all other evidence in this case."

The portion of the instruction at issue comes from the pattern instructions for Kansas (PIK) Crim. 4th 66.040 (2019 Supp.). Our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). The Kansas Judicial Council PIK-Criminal Advisory Committee's (PIK Committee) comment to PIK Crim. 4th 66.040 seems to recognize the term "prima facie evidence," as used in K.S.A. 8-1005(b), is not in the PIK. The PIK

13

Committee explained "that 'prima facie' evidence as used in K.S.A. 8-1005(b) creates a presumption, and the first paragraph of the instruction is worded accordingly." Comment, PIK Crim. 4th 66.040. In support of this reasoning, the PIK Committee cited *State v. Haremza*, 213 Kan. 201, 206, 515 P.2d 1217 (1973) ("We have defined prima facie evidence as evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence."). The PIK Committee also commented: "An earlier version of this instruction was approved in *State v. Price*, 233 Kan. 706, 711, 664 P.2d 869 (1983)." Comment, PIK Crim. 4th 66.040.

The instruction in *Price* provided the jury "shall presume" the defendant was incapable of driving safely if the BAC was over 0.10 percent. 233 Kan. at 708. Here, the jury instruction stated the jury "may assume" Boone was under the influence of alcohol to a degree rendering him incapable of driving safely if a breath test shows a BAC of .08 percent or more. Boone challenges this distinction, observing that one is a permissive presumption, and one is a mandatory rebuttable presumption.

> "A permissive presumption or inference leaves the fact-finder free to accept or reject the inference and does not shift the burden of proof, so such an evidentiary device violates due process 'only if, *under the facts of the case*, there is no rational way the [fact-finder] could make the connection permitted by the inference.' . . .
> "Mandatory presumptions, however, compel the fact-finder to reach a presumed conclusion based on a predicate fact (at least until the defendant produces evidence to rebut the presumption). [Citations omitted.]" *State v. Martinez*, 317 Kan. 151, 160-61, 527 P.3d 531 (2023).

While the PIK Committee seems to suggest K.S.A. 8-1005(b) provides a permissive presumption, that is incorrect. K.S.A. 8-1005(b) requires a mandatory rebuttable presumption: "[I]t *shall be prima facie evidence* that the defendant was under the influence of alcohol to a degree that renders the person incapable of driving safely" if

14

the defendant's blood alcohol content is .08 percent or more. (Emphasis added.) That is, the fact-finder would be compelled to reach a presumed conclusion—Boone was intoxicated to the point he was unable to safely drive—based on a predicate fact—Boone's BAC was higher than .08 percent—at least until Boone produced evidence to rebut the presumption. However, the jury was instructed with a permissive presumption—it *may assume* Boone was under the influence of alcohol to the extent he could not drive safely. The jury was instructed Boone's BAC test result was not conclusive but should be considered along with all other evidence presented. Thus, the instruction left the jury free to accept or reject the inference and did not shift the burden of proof.

"Jury instructions 'must always fairly and accurately state the applicable law.' . . . [B]ecause the permissive-inference instruction deviates from the mandatory presumption in the statute, it is not legally appropriate. [Citations omitted.]" *Martinez*, 317 Kan. at 163. In fact, a slew of recent Kansas Supreme Court cases suggests our Supreme Court is departing from its position in *Price*. See *State v. Strong*, 317 Kan. 197, 527 P.3d 548 (2023); *State v. Slusser*, 317 Kan. 174, 527 P.3d 565 (2023); *Martinez*, 317 Kan. 151; *State v. Bentley*, 317 Kan. 222, 526 P.3d 1060 (2023); *State v. Valdez*, 316 Kan. 1, 512 P.3d 1125 (2022); *State v. Holder*, 314 Kan. 799, 502 P.3d 1039 (2022). These cases evaluated K.S.A. 21-5705(e), before the statute was amended in 2024, which stated: "[T]here shall be a rebuttable presumption of an intent to distribute if any person possesses [certain, specific quantities of a controlled substance.]" While these cases analyze a different statute, the rationale is the same—a jury instruction is not legally appropriate if it states the presumption is permissive, but the statute mandates the presumption. Further, there is no distinction between the weight of drugs and BAC as they both provide numeric benchmarks from which the mandatory presumptions arise; what is true for drugs is true for alcohol. We find the jury instruction was legally inappropriate.

*Harmless error*

Because the jury instruction was not legally appropriate, we must determine whether any instructional error affected the outcome of the trial or was harmless error. *Plummer*, 295 Kan. at 168. If the challenging party raised the issue below and does not argue that the failure to instruct violated a constitutional right, the instructional error is reversible only if the appellate court determines "there is a 'reasonable probability that the error [affected] the outcome of the trial in light of the entire record.'" 295 Kan. at 168. The party benefiting from the error—here, the State—has the burden to prove there was no such probability. See *State v. Keyes*, 312 Kan. 103, 110, 472 P.3d 78 (2020).

For the same reasons stated above in the sufficiency of the evidence analysis, the State has met its burden as the evidence against Boone was strong and, as previously discussed, the instructional error was more favorable to Boone as it told the jury it *may assume*—not *shall presume*—he was operating the truck under the influence of alcohol to a degree rendering him incapable of driving safely. Further, the district court instructed the jury it was entitled to use its common knowledge and experience and to consider all the evidence admitted during the trial. Jurors could easily conclude Boone was impaired. In other words, even without the rebuttable presumption instruction, the jury still had the evidence of Boone's BAC and, viewing that evidence through the lens of its common knowledge and experience, could easily arrive at the conclusion it did. There is no reasonable probability such error affected the outcome of the trial. The error was harmless.

IV.     THERE WAS NO CUMULATIVE ERROR

Finally, Boone argues even if none of the errors he alleges are individually reversible, their cumulative effect requires reversal of his conviction. We have unlimited review over claims of cumulative error. *State v. Taylor*, 314 Kan. 166, 168, 496 P.3d 526

(2021), *disapproved of on other grounds by State v. Waldschmidt,* 318 Kan. 633, 546 P.3d 716 (2024).

> "The cumulative effect of trial errors may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. If any of the errors being aggregated are constitutional, their cumulative effect must be harmless beyond a reasonable doubt. [Citations omitted.]" *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

At most, Boone identified two harmless errors related to Ivener's statement and the jury instruction. The question becomes whether those two harmless errors, together, amount to cumulative error. The cumulative prejudicial effect of those errors was minimal. There is no meaningful interrelationship between the alleged errors. Had Ivener's statement been redacted, the jury still would have heard other statements directly from Boone stating he was driving home from the bar after drinking. The officers' body cams and dash cam revealed Boone's body language and mannerisms, which would have led a jury to convict Boone regardless of Ivener's statement or the jury instruction. The jury was also instructed the test results were not conclusive but should be considered with all other evidence. The evidence against Boone was strong, particularly the body cam footage showing his confusion, disorientation, and signs of impairment at the scene. Given these facts, Boone is not entitled to a new trial based on cumulative error.

V.    THE JOURNAL ENTRY MUST BE CORRECTED

Our review of the record reflects the amended journal entry of judgment ordered Boone to serve 1,440 hours of house arrest. The district court orally pronounced Boone's

sentence to include 1,920 hours of house arrest. A district judge's oral pronouncement of a sentence controls over a conflicting written journal entry, which creates a clerical error that may be corrected at any time. *State v. Edwards*, 309 Kan. 830, 835-36, 440 P.3d 557 (2019). We therefore remand the case and order the district court to prepare and file a nunc pro tunc journal entry to correct the hours of house arrest Boone must serve.

Affirmed and remanded with directions.